UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CORIELLE JOHNSON,

           Plaintiff,                               Case No. 2:15-cv-17

v.                                                    Honorable Gordon J. Quist

NORMA KILLOUGH et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants LaPlante, Mackie and Russell. The Court will serve the complaint against Defendants Snyder, Killough and Mize. In addition, the Court will deny Plaintiff's motion for a preliminary injunction.

**Discussion**

      I.        Factual allegations

Plaintiff Corielle Johnson is incarcerated by the Michigan Department of Corrections (MDOC) at Marquette Branch Prison (MBP), though the events giving rise to the complaint occurred while he was incarcerated at Baraga Correctional Facility (AMF). Defendants are: MDOC Special Activities Coordinator Norma Killough, Grievance Specialist Richard Russell, Grievance Coordinator (unknown) LaPlante, Warden Thomas Mackie, Chaplain Keith Snyder, and Operations Administrator E. Mize.

Plaintiff alleges that he is a believer in "I am" (also called Yahweh or YHWH) and follows the "way of Abram" set forth in the Bible. (Compl., docket #1, Page ID#5.) In April 2013, he requested a religious diet from Chaplain Snyder because he desired to be "eating holy," which means eating food blessed by a "Levitical Priest" and "having his food touched by no unclean utensil, hand, or other foods." (*Id.* at Page ID##5-6.) Snyder interviewed Plaintiff, and Plaintiff explained that he is not Jewish, but that he is a Hebrew in the "bloodline" of Eber, "son of Shem, son of Noah[.]" (*Id.* at Page ID#5.) Snyder submitted Plaintiff's request to Special Activities Coordinator Killough and Operations Administrator Mize. Snyder, Killough and Mize allegedly conferred with one another and decided that a religious diet was not warranted. In a March 5, 2014 memorandum, Killough explained the reasons for denial of Plaintiff's request:

> Mr. Johnson requested and was interviewed for the kosher menu by Chaplain Snyder of the Baraga Correctional Facility in April of 2013. While it is difficult for one person to discern the sincerity and intent of another, based on the information provided and on a review of his recent behavior, Mr. Johnson's request for a religious meal accommodation is denied.

(Mem. to Warden Thomas Mackie, docket #1-1, Page ID#16.) The memorandum noted that Plaintiff's "[r]ecent behavior . . . includes 51 misconducts since April 2013." (*Id.*)

-2-

When Plaintiff received notice of the denial of his request, he was on "modified access" to the grievance process. (*Id.* at Page ID#10.) Under MDOC policy, a prisoner may be placed on modified access for filing "an excessive number of grievances which are vague, duplicative, raise non-grievable issues, . . . contain prohibited language. . . , or [if the prisoner] is found guilty of [intentionally filing an unfounded grievance.]" MDOC Policy Directive 03.02.130 ¶ HH (July 9, 2007). While on modified access, the prisoner can obtain grievance forms only through the Step I coordinator, who must first determine whether the issue is grievable and otherwise meets the criteria for an appropriate grievance under the policy. *Id.* ¶ KK. On March 12, 2014, Plaintiff asked Grievance Coordinator LaPlante for two Step I grievance forms (one regarding the denial of a religious diet and the other for a claim of sexual harassment) and a Step II grievance form. On March 30, 2014, Plaintiff received two of the requested forms; he did not receive a form for complaining about the rejection of his request for a religious diet. Thereafter, Plaintiff sent multiple requests so that he could file a grievance regarding his diet, to no avail.

Finally, on May 19, 2014, Plaintiff filed a grievance about the rejection of his religious meal request. Grievance Coordinator LaPlante rejected it as untimely, even though LaPlante was the one who prevented Plaintiff from filing the grievance at an earlier date. Plaintiff appealed that decision, and Warden Mackie and Grievance Specialist Russell denied his appeal at Steps II and III of the grievance process.

Plaintiff claims that Defendants have substantially burdened the practice of his religion (in violation of the First Amendment and the RLUIPA), and subjected him to "psychological torture and spiritual pain" (ostensibly in violation of the Eighth Amendment), by refusing to accommodate his religious diet. (*Id.* at Page ID#7.) He further claims that Defendants LaPlante, Mackie and Russell violated MDOC policy and deprived Plaintiff of access to the courts

when they failed to provide grievance forms or properly review his grievances. Plaintiff claims that Defendants should be held liable under 18 U.S.C. §§ 2, 241, and 242 for their conduct, in addition to § 1983 and the RLUIPA. As relief, Plaintiff seeks compensatory and punitive damages. In addition, in a motion filed with the complaint, Plaintiff seeks a preliminary injunction.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. 18 U.S.C. §§ 2, 241, 242

Plaintiff cites portions of the federal criminal code, 18 U.S.C. §§ 2, 241, and 242, as a basis for relief. As a private citizen, Plaintiff may not enforce these statutes. *See Abner v. Gen. Motors*, 103 F. App'x 563, 566 (6th Cir. 2004) (finding that a private citizen cannot initiate a federal criminal prosecution under 18 U.S.C. § 241); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242."). Plaintiff lacks "a judicially cognizable interest in the prosecution or nonprosecution" of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Furthermore, the foregoing statutes do not provide for a private right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (finding that "the district court properly dismissed [the plaintiff's] claim pursuant to 18 U.S.C. §§ 241 or 242 because [the plaintiff] has no private right of action under either of these criminal statutes"). Thus, any claims asserted under the foregoing statutes will be dismissed.

### B. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Defendants Mackie & Russell

The only specific conduct by Warden Mackie and Grievance Specialist Russell that is alleged in the complaint is that they affirmed the denial of Plaintiff's grievance during the grievance appeal process. Liability under § 1983 may not be imposed simply because a supervisor

denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Furthermore, even if their subordinates engaged in unconstitutional conduct, Defendants Mackie and Russell are not liable merely by virtue of their supervisory roles or their awareness of that conduct. Section 1983 does not permit government officials to be held liable under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Plaintiff contends that Defendants Mackie and Russell conspired with other Defendants to violate his rights, but this contention is not supported. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive him of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to Plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, Plaintiff must plead a conspiracy claim with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008);

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). As to Defendants Mackie and Russell, Plaintiff's claim is wholly conclusory and speculative. The complaint contains no specific facts from which to make a plausible inference that they shared a plan or otherwise agreed to violate Plaintiff's rights.

In short, Plaintiff has not alleged that Defendants Mackie or Russell engaged in any unconstitutional conduct. Thus, Plaintiff does not state a § 1983 claim against them. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### 2. Defendant LaPlante

Plaintiff contends that Grievance Coordinator LaPlante improperly prevented Plaintiff from exhausting his administrative remedies for his religious-diet claim, thereby denying him access to the courts. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust available administrative remedies before bringing claims under federal law with respect to prison conditions). In particular, LaPlante failed to provide a grievance form, and later rejected a grievance regarding Plaintiff's diet as untimely.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). As the Sixth Circuit has held, however, the PLRA "only mandates exhaustion of *available* remedies," and thus, "a prisoner's right to access the courts cannot be compromised by a grievance officer's alleged interference with the institutional grievance process." *Crump v. Prelesnik*, No. 13-1627, order at 2-3 (6th Cir. Aug. 4, 2014). In other words, Defendant's interference with Plaintiff's ability to file a timely grievance could not have prevented Plaintiff from exhausting his remedies as required by the PLRA, because Plaintiff "could raise such interference to show that he satisfied 'available' remedies. . . ." *See id.* at 3; *see also Walker*, 128

F. App'x at 446 (noting that if a grievance officer prevented a prisoner on modified access from filing a non-frivolous grievance, "that would be the end of possible administrative remedies with regard to that grievance"). Consequently, Plaintiff does not state an access-to-the-courts claim.

To the extent Plaintiff asserts that Defendant LaPlante failed to follow MDOC policy with regard to the rejection of his grievance or requests for grievance forms, he does not state a claim under § 1983 because that statute only permits claims for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). It does not provide redress for a violation of a state law or prison policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Plaintiff also asserts that LaPlante conspired with other Defendants, but like his conspiracy claim against Mackie and Russell, this claim is conclusory and speculative. Thus, Plaintiff does not state a § 1983 claim against LaPlante.

### 3. Defendants Killough, Snyder & Mize

Plaintiff alleges that Defendants Killough, Snyder and Mize burdened the exercise of his religion by denying his request for kosher meals. At this stage of the proceedings, the Court concludes that these allegations suffice to state at least a First Amendment claim against them. Thus, the Court will order service of the complaint on the latter Defendants.

### C. RLUIPA

Under the RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability," unless the government can show (1) that the imposition of the burden "is in furtherance of a compelling governmental interest," and (2) the burden furthers that interest by use of the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). At this stage of the

proceedings, the Court concludes that Plaintiff states a possible official-capacity claim under the RLUIPA against Defendants Killough, Snyder and Mize. Plaintiff does not allege that Defendants LaPlante, Mackie or Russell had any involvement in the decision to refuse him a religious diet. Thus, he does not state a claim against them, and they will be dismissed.

      III.      <u>Preliminary Injunctive Relief</u>

In a motion filed with the complaint (docket #3), Plaintiff seeks a preliminary injunction requiring the MDOC to provide him with a kosher diet. As an initial matter, the Court may not issue a preliminary injunction in these circumstances, as Defendants have not received notice of Plaintiff's request. Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." *See Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 130-31 (5th Cir. 1990) ("The courts consistently have treated [R]ule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without notice or the opportunity for a hearing on disputed questions of fact and law.").

On the other hand, to the extent that Plaintiff seeks a temporary restraining order (TRO), which may be issued without notice, he has failed to support his request. Rule 65(b)(1) provides that the Court may issue a TRO without notice only if, among other things, "specific facts *in an affidavit or a verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1) (emphasis added). Plaintiff has not presented an affidavit or verified complaint setting forth the "specific facts" required by the rule.

Furthermore, the balance of factors weighs against the issuance of preliminary injunctive relief. In exercising its discretion to grant such relief, a court must consider whether Plaintiff has established the following elements: (1) a strong or substantial likelihood of success on

the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These factors are not prerequisites to the grant or denial of injunctive relief, but they must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claim that prison officials have imposed a burden on the exercise of his religion in violation of the Constitution or the RLUIPA.

To establish that his First Amendment rights have been violated, Plaintiff must establish: (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this

practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). Similarly, the RLUIPA provides, in relevant part, that "[n]o government shall impose a *substantial burden* on the religious exercise of a person residing in or confined to [a prison] . . . ." 42 U.S.C. § 2000cc–1(a) (emphasis added).

It appears that Defendants denied Plaintiff's request, at least in part, based on a perceived lack of sincerity in his beliefs. Plaintiff offers no evidence to support the existence of his beliefs, let alone the sincerity of them. The unsworn allegations in Plaintiff's complaint that he maintains certain religious beliefs are insufficient to demonstrate a substantial likelihood of success on his claims that Defendants refused to accommodate his religious beliefs.

As for irreparable harm, Plaintiff contends that he will suffer in the absence of an injunction because he will be forced to eat food that does not conform to his beliefs. Given the lack of evidence regarding the existence or sincerity of those beliefs, however, the presence of irreparable harm is not evident. Furthermore, the Court notes that Plaintiff did not receive a decision on his request for a kosher diet for nearly a year. He made the request in April 2013, and his request was denied in March 2014. He does not allege that he took any action during that time to obtain a quicker response. This apparent lack of effort to secure compliance with his beliefs for such an extended period of time undermines the sincerity of those beliefs and the possibility that irreparable harm will result if the injunction is not granted.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state

prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, for all the foregoing reasons, Plaintiff's motion for a preliminary injunction will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants LaPlante, Mackie and Russell, and all claims arising under 18 U.S.C. §§ 2, 241, and 242, will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Killough, Snyder and Mize. The Court will deny Plaintiff's motion for a preliminary injunction.

An Order consistent with this Opinion will be entered.


Dated: March 23, 2015                                   /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE